**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **HEATHER HEDGE,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**MICHAEL J. ASTRUE,** )<br>**Commissioner of Social Security,** )<br>)<br>**Defendant.** )<br>) | **CIVIL NO. 3:09CV714** |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Heather Hedge, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for Social Security Disability ("DIB") and Supplemental Security Income payments ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 5) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

judgment (docket no. 10) be GRANTED; and that the final decision of the Commissioner be AFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for SSI and DIB on September 7, 2006, claiming disability due to attention deficit disorder, post traumatic stress disorder, bipolar disorder, personality disorder, depression, and anxiety, with an alleged onset date of February 1, 2006. (R. at 8, 22, 121-29, 179.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 8, 88-92.) On January 30, 2009, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 8, 20-65.) On July 15, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 18-19.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process

3

that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 10.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of schizoaffective disorder, borderline personality disorder, post traumatic stress disorder, and attention deficit disorder, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 10-12.) The ALJ next determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, except that she was limited non-exertionally to jobs with simple instructions, little decision making, and minimal interaction with coworkers. (R. at 12-17.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as a veterinarian attendant or cashier because of the non-exertional requirements for each of those positions. (R. at 17-18.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 18-19.) Specifically, the ALJ found that Plaintiff could work as a light exertion handpacker, medium exertion handpacker, small parts assembler, and industrial janitor. (R. at 18.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 19.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the

alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that the ALJ's RFC determination failed to account for Plaintiff's alleged hallucinations and mood swings that could cause frequent absences, and that if the ALJ had accounted for those limitations, he would have found that Plaintiff was not able to perform her past relevant work or any other job that exists in significant numbers in the national economy.[6] (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 4-7.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 10-14.)

At step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(5)(i). An ALJ first assesses the nature and extent of the claimant's limitations, and then determines the claimant's RFC for work activity on a regular and continuing basis. See 20 C.F.R. § 404.1545(b). Generally, it is the responsibility of the claimant to provide the evidence that the ALJ utilizes in making his RFC determination; however, before a determination is made that a claimant is not disabled, the ALJ is responsible for developing the claimant's complete medical history, including arranging for consultative examinations, if necessary. See 20 C.F.R. § 404.1545(a)(3). The ALJ's RFC determination must incorporate impairments supported by the objective medical evidence in the record and those based on the claimant's <u>credible</u> complaints. See C.F.R. § 404.1545(a)(3) (emphasis added).

---

[6] At the hearing, the ALJ asked the VE whether a person who suffers from hallucinations and sometimes misses four days per week due to a psychiatric condition would be able to perform even a simple entry level position, and the VE responded that hallucinations would not be well tolerated and frequent absences would be unacceptable. (R. at 60-62.)

In support of her position that her RFC should have included limitations based on her alleged hallucinations and an inability to control her emotions, Plaintiff relies primarily on her hearing testimony, which she contends was credible and supported by the medical record. (Pl.'s Mem. at 6-7.) Thus, in assessing whether the ALJ properly excluded those limitations from the Plaintiff's RFC, the Court must first assess whether the ALJ's credibility determination is supported by substantial evidence and application of the correct legal standard.

In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See

8

Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

At the hearing before the ALJ, Plaintiff testified about her hallucinations and mood swings as follows.[7] She testified that her hallucinations were both visual and auditory. (R. at

---

[7] Plaintiff also testified about numerous symptoms other than hallucinations and mood swings. For example, she stated that she had a history of drug use, including abuse of over-the-counter medicine in her early twenties. (R. at 29-30.) She also testified that she used to be a so-called "cutter," but that she was no longer cutting herself. (R. at 33.) She explained to the ALJ that approximately four to five years prior to her hearing, she was charged with child neglect, and her then ten month old son was taken away from her. (R. at 31-32.) She further stated that she had supervised visitation with her son for one day every other weekend, but that she did not think that she was mentally capable of caring for him on her own. (R. at 35.) She informed the ALJ that she had difficulty following television programs, that she did not have any hobbies because she could not maintain sufficient focus, that she felt as if she had "1,000 thoughts in [her] head at once," and that she had difficulty remembering what she had done the day before. (R. at 30-31, 34.) When asked how she spent her time, the Plaintiff responded that she stayed in her room and watched DVDs all day, or slept. (R. at 32.) She further testified that she treated with a psychiatrist and a therapist once every two

33-34.) She described her hallucinations to the ALJ, stating that she sometimes sees the devil, and he tells her to kill herself or others. (R. at 48.) She further indicated that her hallucinations had gotten worse since June of 2008, and that the medications she was being prescribed were not helping. (R. at 46-47.) With regard to her mood swings, Plaintiff testified that her mood cycled through manic and depressive states every day and could change from minute to minute. (R. at 41.) She testified that some days were worse than others, and that she had approximately four bad days per week. (R. at 45.) She explained that, on the bad days, she did not get dressed, answer the phone, or keep social engagements, but she did keep medical appointments and eat. (R. at 45-46.) Plaintiff further testified that she suffered from daily crying spells and had passive thoughts of suicide. (R. at 28.)

After considering Plaintiff's testimony, the ALJ performed the required <u>Craig</u> analysis and found that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible" to the extent they were inconsistent with the ALJ's RFC assessment. (R. at 14.) The ALJ provided an explicit rationale to support his conclusions, namely, that the medical evidence in the record and Plaintiff's reported daily activities were inconsistent with the alleged severity of her symptoms. (R. at 12-17.) Specifically, although the Plaintiff testified that she did not think her medications helped, the medical evidence in the record reflects that she was stable when she was compliant

---

to three months. (R. at 32.) She stated that she did not help with cleaning and other tasks around the house, but she was able to maintain her personal hygiene. (R. at 36-37.) She also informed the ALJ that she has an irregular sleep pattern, usually falling asleep around 2:00 or 3:00 a.m. and rising around 10:00 a.m., and that she sometimes sleeps most of the day. (R. at 40.) However, for the purposes of analyzing Plaintiff's argument that the ALJ improperly failed to account for her hallucinations and mood swings in his RFC determination, the Court will focus on the Plaintiff's testimony regarding only those two symptoms.

with her prescribed medications (specifically, Seroquel[8]).  (R. at 14-17, 302-303, 318-19, 374, 425, 453, 549, 593-94.)  Moreover, as the ALJ noted, the Plaintiff is able to go for walks, visit the library, read, watch television, play video games, scrapbook, engage in light housework, shop for groceries, take care of her chinchilla, and attend counseling sessions despite her alleged limitations.  (R. at 17, 196, 198, 200, 208-11, 222-27, 240-42, 245-47.)

Plaintiff argues that her allegations concerning hallucinations are credible and supported by the medical evidence.  (Pl.'s Mem. at 7.)  In support of her position, she relies on progress notes dated April 1, 2008; May 14, 2008; August 13, 2008; and October 22, 2008, that reflect that she reported to her treating physician that she was suffering from hallucinations.  (Pl.'s Mem. at 7 (citing R. at 575, 577, 580, 581.)  The April 1, 2008 note reflects that she was positive for auditory hallucinations telling her to kill herself or someone else; however, it also indicates that she had stopped taking Seroquel in February 2008 and had requested to restart it.  (R. at 581.)  The May 14, 2008, note reflects that her hallucinations were "now gone."  (R. at 580.)  The August 13 and October 22, 2008, notes state that Plaintiff was suffering from visual hallucinations and that she was seeing dots, but the ALJ addressed these notes, observing that Plaintiff was, at the time, starving herself.  (R. at 575, 577.)  Her anorexia and significant weight loss are also reflected in the progress notes.  (R. at 575, 577.)  Thus, the specific records relied upon by the Plaintiff are consistent with the ALJ's credibility determination and support his conclusion that her hallucinations were not so severe, when she was taking Seroquel, to prevent her from working with appropriate non-exertional limitations.  The evidence in the record

---

[8] Seroquel is an "atypical antipsychotic agent indicated for Bipolar Disorder including: Bipolar Depression (1.1), Bipolar Mania (1.1), Bipolar Maintenance (1.1), and Schizophrenia (1.2)."  <u>Physicians' Desk Reference</u> 750 (64th ed. 2010).

supports the ALJ's determination that the Plaintiff's testimony regarding the extent and limiting effects of her symptoms was less than credible.

In determining the Plaintiff's RFC, the ALJ conducted a thorough review of Plaintiff's medical records, along with the opinions of Plaintiff's treating physicians and the State Agency psychological consultants. (R. at 12-17.) The ALJ also considered the Plaintiff's hearing testimony and her subjective complaints about the intensity, persistence, and limiting effects of her symptoms to the extent that he found them to be credible. (R. at 13-14.) Because Plaintiff's allegations regarding the frequency and severity of her hallucinations and mood swings were not supported by the record, they were properly excluded in the determination of Plaintiff's RFC. Based upon his consideration of all of this evidence, he concluded that the Plaintiff had the RFC to perform a full range of work at all exertional levels, but that she was limited non-exertionally to jobs with simple instructions, little decision making, and minimal interaction with coworkers. (R. at 12-13.)

A review of the record demonstrates that the ALJ's analysis of Plaintiff's RFC was supported by substantial evidence and application of the correct legal standards. Accordingly, the Court recommends a finding that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff is not disabled.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 5) be DENIED; that Defendant's motion for summary judgment (docket no. 10) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                            /s/
                                      DENNIS W. DOHNAL
                                      UNITED STATES MAGISTRATE JUDGE

Date: April 20, 2010
Richmond, Virginia